UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RICHARD P. RUBINSTEIN and
KATHERINE KOLBERT,

                        Plaintiffs,

   -against-                                                        1:08-CV-0337 (LEK/RFT)

CLARK & GREEN, INC.,

                        Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

      Plaintiffs Richard Rubinstein and Katherine Kolbert ("Plaintiffs") commenced this action against Defendant Clark & Green, Inc. ("Defendant"), alleging breach of contract. See generally Amended Complaint ("Am. Compl.") (Dkt. No. 9); Answer (Dkt. No. 12). Presently before the court are Defendant's Motion for summary judgment and Plaintiffs' Motion for partial summary judgment. Def.'s Mot. (Dkt. No. 43); Pls.' Mot. (Dkt. No. 42). For the reasons discussed below, Defendant's Motion for summary judgment is granted and the Complaint is dismissed. Plaintiff's Motion for partial summary judgment is denied.

**I.    BACKGROUND**

      The instant ligation arises from Plaintiffs' decision to build a home in the Town of Hillsdale, Columbia County, New York. See Am. Compl. (Dkt. No. 9). In October 2005, Plaintiffs contacted Defendant, a Massachusetts architecture firm, to discuss hiring Defendant to design the home. See

1

Rubinstein Aff. ¶5; Email from Rubinstein, Ex. D (Dkt. No. 42). Prior to receiving a retainer, Alan R. Clark, a residential designer and a partner at Clark & Green, described the design process and fee structure. He explained that the firm preferred to do the entire job on an hourly basis, and that design and construction would proceed in a series of stages. Email from Clark, Ex. I (Dkt. No. 42). Clark proposed a work schedule, which indicated that Defendant would commence work on January 15, 2006, complete the "design development" stage by April 15, 2006, and ultimately begin construction on September 15, 2006. Email from Clark, Ex. B (Dkt. No. 42). Clark stated that this schedule was "a little tight." Id. He recommended beginning construction no later than October 1, 2006, or if commencing before that date was not possible, waiting until the following Spring.[1] Id.

Plaintiffs decided to hire Defendant on or about December 6, 2005. See Email from Rubinstein, Ex. D (Dkt. No. 42). Plaintiffs sent Defendant a $5,000 advance payment against hourly fees on January 9, 2006, and Defendant commenced the first stage of work on designing the home. Invoices, Ex. K (Dkt. No. 42). Defendant continued to develop the design of the home for approximately five months. See Am. Compl. (Dkt. No. 9). Defendant received payments for services in accordance with its standard hourly rates. See Invoices, Ex. K (Dkt. No. 42). During this period, Plaintiffs declined repeated requests by Defendant to enter into a formal written agreement. See Emails from Clark, Exs. D, I, M, P (Dkt. No. 42). Plaintiffs stated that they wished to "target a more comprehensive understanding in writing" before signing a formal document. Email from Rubinstein, Ex. D (Dkt. No. 42). The parties did not sign a written understanding or formal contract.

---

[1] Defendant proposed a nearly identical work schedule on March 18, 2005, explaining that the schedule was "ambitious," and that should it prove to be too ambitious, Plaintiffs should postpone commencement of construction until Spring 2007. See Proposed Contract, Ex. P (Dkt. No. 42).

By July 2006, the Firm had not yet finished the "design development" phase. See Email from Rubinstein, Ex. L; Email from Clark, Ex. M (Dkt. No. 43). On July 13, 2006, Clark informed Plaintiffs that due to delays, construction would likely not begin before April 2007. Email from Clark, Ex. M (Dkt. No. 43). Plaintiffs discharged Defendant on or about July 30, 2006, on the stated basis that Defendant had failed to complete the design work in accordance with the proposed work schedule. See Am. Compl. (Dkt. No. 9). Plaintiffs commenced this action for breach of contract on July 24, 2008, seeking a sum no less than $343,000, together with interest from July 30, 2006 and costs and disbursements. Id.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A court must inquire whether genuine factual issues exist that can only be resolved by a finder of fact because "they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The court is required to "resolve all ambiguities, and credit all factual inferences that could be rationally drawn, in favor of the party opposing summary judgment." Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2001); Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001).

The non-moving party may preclude summary judgment by "com[ing] forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 252. To survive a motion for summary judgment, the non-moving party "must do more than simply show that there is

some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). The non-moving party may survive the motion for summary judgment by presenting evidence "that would be sufficient . . . to establish the existence of [an] element at trial." Grain Traders Inc. v. Citibank, N.A., 160 F.3d 97, 100 (2d Cir. 1998) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

### III.  DISCUSSION

Actions to recover upon alleged contracts often require courts to examine the intent of parties, and disputes of fact frequently arise in the process. See Brown v. Cara, 420 F.3d 148, 152-53 (2d Cir. 2005). However, the Second Circuit has held that "where a question of intention is determinable by written agreements, the question is one of law, appropriately decided on a motion for summary judgment." Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 71-72 (2d Cir. 1989). This Court must determine whether an issue of material fact exists as to whether the work schedule provided to Plaintiffs constituted a binding agreement. See Anderson, 477 U.S. at 250 (1986).

Defendant argues that a genuine issue of material fact does not exist, and that summary judgment is justified because neither party intended to be bound by the work schedule. See Def.'s Mot. (Dkt. No.43). Plaintiffs maintain that emails exchanged between the parties contained all the essential terms of a contract, and thereby created a binding agreement for Defendant to perform under the timetable. See Pls.' Mem. of Law (Dkt. No. 42). Thus, Plaintiffs argue that Defendant breached its obligation to complete the design development phase by April 15, 2006, which would have allowed construction to commence by September 15, 2006. Am. Compl. (Dkt. No. 9).

The Second Circuit applies the framework articulated in <u>Teachers Insurance & Annuity Association v. Tribune Co.</u>, 670 F. Supp. 491 (S.D.N.Y. 1987), to determine whether preliminary agreements are enforceable. <u>See, e.g.</u>, <u>Arcadian</u>, 884 F.2d at 71-72. Under this framework, there are two types of binding preliminary agreements. Parties create agreements of the first type when they agree "on all the points that require negotiation (including whether to be bound) but agree to memorialize their agreement in a more formal document." <u>Adjustrite Sys., Inc. v. GAB Business Servs., Inc.</u>, 145 F.3d 543, 548 (2d Cir. 1998).

The second type, called a "binding preliminary commitment," is created "when the parties agree on certain major terms, but leave other terms open for further negotiation." <u>Adjustrite</u>, 145 F.3d at 548. Parties to the second type of agreement "accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement." <u>Tribune</u>, 670 F. Supp. at 498. Neither party to the second type of agreement, however, may demand performance of the transaction. <u>Adjustrite</u>, 145 F.3d at 548.

The parties in the case at bar never entered into a formal, written contract. Both parties, however, contemplated memorializing terms at a later date. <u>See</u> Emails from Clark, Exs. D, I, M, P(Dkt. No. 42); Email from Rubinstein, Ex. F (Dkt. No. 42). Thus, the inquiry here is whether a preliminary agreement of the first type was created, such that the parties were legally bound to perform under the timetable.

In the absence of a formally executed contract, a binding agreement will only exist in rare instances where a preliminary agreement clearly manifests the intent of the parties. <u>Shann v. Dunk</u>, 84 F.3d 73, 77 (2d Cir. 1996); <u>Arcadian</u>, 884 F.2d at 72. <u>Courts will examine the totality of the circumstances to discern the intent of the parties.</u> See R.G. Group, Inc. v. Horn & Hardart Co., 751

F.2d 69, 74 (2d Cir. 1984); Winston v. Mediafare Entertainment Corp., 777 F.2d 78, 80 (2d Cir. 1986). Courts will generally not consider subjective evidence of intent. See Rule v. Brine, Inc., 85 F.3d 1002, 1010 (2d Cir. 1996).

The Second Circuit applies four factors to determine whether parties intended to be bound in the absence of a formally executed document:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

R.G. Group, 751 F.2d at 75-76; see also Adjustrite, 145 F.3d 543 (2d Cir.1998); Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1986). Courts apply these factors as a balancing test. R.G. Group, 751 F.2d at 74, 75. No single factor is decisive, although each provides significant guidance. Id. Thus, the weight of these factors combined will direct the Court as to whether the parties intended to be bound. See id.

### a. Express Reservation of Rights

This first factor determines whether the preliminary agreement contains an explicit statement that a party will not be bound in the absence of a formal document. See R.G. Group, 751 F.2d at 75; Adjustrite, 145 F.3d at 549. Courts accord this factor considerable weight. Arcadian, 884 F.2d at 72. The Second Circuit has noted, however, that the "fact that [a] preliminary agreement contains no express reservation of the right not to be bound is not dispositive of whether it is binding [because] a reservation of right not to be bound presumes that there is some expression of commitment or agreement in the writing." Brown, 420 F.3d at 154 (quoting Williston on Contracts § 4:8). Thus, where a preliminary agreement lacks an expression of commitment to begin with,

neither party will reserve the right not to be bound by it.  See Adjustrite, 445 F.3d at 549.

In the instant case, although neither party expressly reserved the right not to be bound, the written communications between the parties lack any expression of commitment to be bound. Indeed, Defendant expressly stated on several occasions that the work schedule was merely a proposal.  See Emails from Clark, Exs. C, M (Dkt. No. 42).  Clark stated that the schedule was "tight," and warned Plaintiffs several times that delays may cause construction to begin in Spring 2007 rather than Fall 2006.  Email from Clark, Ex. C (Dkt. No. 42).  Even as late as March 18, approximately three months after Defendant had commenced work on the design, Clark again warned Plaintiffs that the proposed schedule was "ambitious," and that construction may commence in Spring 2007.  Email from Clark, Ex. M (Dkt. No. 42).

Moreover, the record lacks evidence that Plaintiffs intended for Defendant to be bound to complete the design development within the confines of the work schedule.  The Second Circuit has held that "[w]hat matters are the parties' expressed intentions, the[ir] words and deeds which constitute objective signs in a given set of circumstances."  See R.G. Group, 751 F.2d at 74.  Here, Plaintiffs made no reference to the work schedule in the very communications that Plaintiffs allege formed the basis of the preliminary agreement.  See Email from Rubinstein, Ex. D (Dkt. No. 42). Plaintiffs have not offered evidence of any communications stating that Defendant was to strictly adhere to the work schedule.  Indeed, Plaintiffs made no express reference to Defendant's proposed work schedule in any written communication.  Therefore, the first factor strongly weighs in favor of Defendant.

  **b.**  **Partial Performance**

The second factor under Adjustrite determines whether there has been any partial

performance under the agreement. Adjustrite, 145 F.3d at 549. Because it is the objective evidence of intent that matters, partial performance may in some instances indicate whether the parties have formed a binding preliminary agreement. See R.G. Group, 751 F.2d at 74.

Plaintiffs argue that Defendant's partial performance of services for approximately six months serves as evidence that Defendant intended to be bound by the work schedule. Pls.' Answering Mem. of Law (Dkt. No. 42). Here, however, partial performance does not clearly indicate the existence of a binding agreement to adhere to the work schedule. The Second Circuit instructs courts to examine the parties' "expressed intentions." R.G. Group, 751 F.2d at 74. The mere fact that Defendant performed for a period of time does not in and of itself support the proposition that Defendant was obligated to perform under the timetable.

Similarly, the delays do not, as Defendant argues, necessarily prove that the parties intended for the timetable to serve as a mere guideline for performance rather than as a binding agreement. That is to say, the delays could have occurred despite an intention by both parties to be bound by the timetable. Therefore, partial performance does not support either party's arguments as to the intended legal effect of the work schedule.

  c.  **Agreement on Contract Terms**

The third factor examines whether the parties had "literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to." R.G. Group, 751 F.2d at 74, 76. A strong presumption exists against finding a binding obligation where the writings "call for future approvals and expressly anticipate future preparation and execution of contract documents." Arcadian 884 F.2d at 73 (quoting Tribune, 670 F. Supp. at 499).

Plaintiffs argue that the parties had fully agreed upon the deadlines in the work schedule and

8

nothing substantial remained to negotiate. Pls.' Mem. of Law (Dkt. No. 42). Defendant argues that the parties never finished negotiating these deadlines. Def.'s Mem. of Law (Dkt. No. 43).

The weight of the evidence substantiates Defendant's understanding that the parties had not agreed on the deadlines. Defendant included the work schedule twice in written communications to Plaintiffs. See Def.'s Exs. B, P (Dkt. No. 42). The mere repetition of the work schedule does not, as Plaintiffs argue, indicate that the parties fully agreed to the terms. Defendant first proposed the work schedule on November 29, 2005, prior to Plaintiffs' decision to hire Defendant, and before they formally retained Defendant. See Email from Clark, Ex. C (Dkt. No. 42). The work schedule was presented in the context of negotiation. It did not contain contractual language indicating intent to be bound. Id. Moreover, Defendants stated, in reference to the schedule, that the parties "would talk about all this in more detail." Id.

The March 18, 2006, proposed contract also included the work schedule, but was to be subject to "General Provisions for Limited Professional Services" ("General Provisions"). See Proposed Contract, Ex. P (Dkt. No. 42). The General Provisions, as stated, would modify the work schedule. See id. Under the heading "Work Schedule," the General Provisions provide that "Clark & Green, Inc. will *endeavor* to complete its services within the estimated schedule in the Agreement." Id.; Clark Aff. ¶ 9 (Dkt. No. 43) (emphasis added). This paragraph further lists circumstances that could hinder compliance with the schedule, including the Plaintiffs' own conduct. See Proposed Contract, Ex. P (Dkt. No. 42).

Additionally, an American Institute of Architects ("AIA") Agreement B155, which Clark provided to Plaintiffs, did not include a schedule for performance. See AIA Agreement B155, Ex. A (Dkt. No. 43). Rather, Paragraph 6.3 of the AIA Agreement B155 provided that if the architect's

9

services had not been completed by a date to be determined, through no fault of the architect, then the architect's compensation beyond that time would be "appropriately adjusted." Id.; Clark Aff. ¶ 9 (Dkt. No. 43). The absence of a work schedule in this contract document suggests that Defendant did not intend for the schedule proposed by email to have legally binding effect. Thus, these facts indicate that the parties had not fully agreed to deadlines in the work schedule.

### d. Whether the Agreement is the Type of Contract Usually Committed to Writing.

The Second Circuit has stated that in construing the fourth factor, courts should consider "the size of the transaction, the nature of the assets being purchased, and the length of the contemplated . . . contracts." Adjustrite, 143 F.3d at 549. The Second Circuit has also noted that the "complexity and duration of [an] alleged agreement" is significant in determining whether an agreement is enforceable, absent a formal writing. See Brown v. Cara, 420 F.3d at 155.

Defendant contends that a binding architectural agreement requires more than the mere informal exchange of emails. Def.'s Mem. of Law (Dkt. No. 43). Standard architectural contracts contain intricate and extensive provisions governing all aspects of the architect-client relationship, which were entirely absent from the emails. See AIA Agreement B155, Ex. A (Dkt. No. 43). Further, the agreement here involved a great deal of money and time to complete. Defendant estimated that the project would cost a total of approximately $1.5 million, and require from one to two years to design and construct the home. See Email from Rubinstein, Ex. D; Proposed Contract, Ex. P (Dkt. No. 42). Looking at the standard AIA Agreement B155 provided to Plaintiffs, the formal contract Plaintiffs subsequently entered into with a third party upon discharging Defendant, and considering the complexity and duration of the transaction, it is clear that the project is of the type that parties in agreement would usually committed to writing. See AIA Agreement B155, Ex.

A (Dkt. No. 43); Contract, Ex. K (Dkt. No. 43). Therefore, this factor also weighs in favor of Defendant.

Balancing these four factors together, the weight of the evidence substantiates Defendant's argument that the parties lacked the requisite intent for the work schedule to constitute a binding agreement. See R.G. Group, 751 F.2d at 74, 75. Plaintiffs and Defendant did not create an enforceable agreement under which Plaintiffs may recover in the instant action. Because no genuine issue of material fact remains that would permit a reasonable fact finder to determine otherwise, the Court concludes that Defendant is entitled to judgment as a matter of law.

### IV.  CONCLUSION

Accordingly, it is hereby

**ORDERED,** that Defendant's Motion for summary judgment (Dkt. No. 43) is **GRANTED** and Plaintiffs' Motion for partial summary judgment (Dkt. No. 42) is **DENIED**; and it is further

**ORDERED,** that Plaintiff's Complaint is **DISMISSED**; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:       January 19, 2010
             Albany, New York

*[signature]*
Lawrence E. Kahn
U.S. District Judge